7 F.3d 795
 68 Fair Empl.Prac.Cas. (BNA) 245,
62 Empl. Prac. Dec. P 42,611
Langston BRADLEY, Plaintiff,
Equal Employment Opportunity Commission, Intervenor-Appellant,
v.
PIZZACO OF NEBRASKA, INC., doing business as Domino's Pizza;
Domino's Pizza, Inc., Defendants-Appellees.
 No. 92-3781.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 10, 1993.
Decided Oct. 21, 1993.
Rehearing and Suggestion for Rehearing En Banc Denied Nov. 26, 1993.
 
 Samuel Alan Morcosson, Washington, DC (Donald R. Livingston, Gwendolyn Young Reams, Vincent J. Blackwood and Samuel A. Norcosson, on the brief), for intervenor-appellant.
 Soren J. Jensen, Omaha, NE (Soren S. Jensen and James C. Zalewski, on the brief), for defendants-appellees.
 Before BOWMAN, WOLLMAN, and MAGILL, Circuit Judges.
 BOWMAN, Circuit Judge.
 
 
 1
 This appeal requires us to decide whether the Civil Rights Act of 1991 (the "1991 Act"), 42 U.S.C. § 2000e-2 (Supp. III 1991), applies to a case that was pending at the time of its effective date, where the Equal Employment Opportunity Commission (the "EEOC") is the only remaining plaintiff and seeks relief only in the form of an order requiring the employer prospectively to recognize a narrowly limited medical exception to the employer's no-beard policy.
 
 I.
 
 2
 The EEOC appeals a judgment entered in favor of defendants Pizzaco of Nebraska, Inc., and Domino's Pizza, Inc. (collectively "Domino's"). This action arose out of a Title VII employment discrimination claim brought by Langston Bradley, a former Domino's delivery man. Bradley alleged that Domino's discriminated against him on the basis of race when it fired him for failure to appear clean-shaven in compliance with the company's no-beard policy. The no-beard policy is established nationwide by Pizzaco's franchisor, Domino's Pizza, Inc. Bradley alleged that he suffered from pseudofolliculitis barbae ("PFB"), a skin condition affecting approximately fifty percent of African American males, half of which number cannot shave at all. Bradley claimed that the no-beard policy deprived him and other African American males suffering from PFB of equal employment opportunities in violation of Title VII of the Civil Rights Act of 1964.
 
 
 3
 After a trial of the entire case, including the question of Domino's business justification for its strict no-beard policy, the District Court ruled in favor of Domino's, finding that Bradley and the EEOC failed to show the no-beard policy has a disparate impact on African American males. The court's opinion did not reach the business justification issue. On appeal, in Bradley v. Pizzaco of Neb., Inc., 939 F.2d 610 (8th Cir.1991) (Pizzaco I ), cert. denied, --- U.S. ----, 112 S.Ct. 933, 117 L.Ed.2d 105 (1992), we reversed the District Court's finding of no disparate impact. We held that the evidence presented by the EEOC clearly established a prima facie case of disparate impact on African American males and that the District Court erred in finding otherwise. Pizzaco I, 939 F.2d at 613. We affirmed the District Court's finding that Bradley suffers only a mild case of PFB and can appear clean-shaven as not clearly erroneous. Bradley thus was not entitled to relief and is no longer a party to the litigation. Because the EEOC sought injunctive relief, however, we remanded with directions that the District Court rule on the issue of business justification.
 
 
 4
 On remand, the District Court analyzed the trial record in light of Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), and found for Domino's on the question of business justification. Accordingly, the court denied relief to the EEOC and this appeal followed. We reverse and remand for entry of the injunction sought by the EEOC.
 
 II.
 
 5
 The EEOC contends that because it seeks relief from Domino's ongoing, presently in-place no-beard policy, the 1991 Act governs this case. All that it seeks, the EEOC points out, is the prospective application of the 1991 Act to enjoin a current policy.
 
 
 6
 It is settled in this Circuit that the Civil Rights Act of 1991 does not apply retrospectively to actions pending at the time of its enactment. Fray v. Omaha World Herald Co., 960 F.2d 1370, 1377-78 (8th Cir.1992) (finding no exception allowing retrospective application of § 101 of the Civil Rights Act of 1991 to pending cases or other pre-enactment conduct); Hughes v. Matthews, 986 F.2d 1168 (8th Cir.1992) (applying the Fray rationale in finding that § 102(c) of the 1991 Act does not apply retrospectively); Hicks v. Brown Group, Inc., 982 F.2d 295, 299 (8th Cir.1992) (en banc) (holding that § 101(2)(b) of the Civil Rights Act of 1991 does not apply retroactively to cases pending at the time of its enactment), petition for cert. filed, 61 U.S.L.W. 3669 (U.S. Mar. 23, 1993) (No. 92-1538). We conclude, however, that Fray and the other cases proscribing retroactivity do not restrict us from granting the relief sought by the EEOC in this case. Here, the EEOC seeks to enjoin a current, ongoing policy. The EEOC does not seek relief in any form for actions Domino's took or policy it maintained prior to November 21, 1991, the effective date of the 1991 Act. The posture of the case is exactly as it would be had the EEOC filed its action against Domino's after the effective date of the 1991 Act. Thus, application of the 1991 Act to the facts in this case is purely prospective, and we hold that the 1991 Act governs the case.
 
 III.
 
 7
 The EEOC contends that, on remand following Pizzaco I, the District Court erred by applying the Wards Cove standard to determine the business justification issue. We agree. In the circumstances of this case, Wards Cove was not the applicable legal standard. The relief sought here is prospective only, and the Civil Rights Act of 1991 became effective on November 21, 1991, after we remanded for consideration of the business justification issue but long before the District Court's decision on remand was filed on August 19, 1992. The 1991 Act expressly reinstated the law of "business justification" as it existed before Wards Cove was decided. The 1991 Act states in its preamble that it is meant "to codify the concepts of 'business necessity' and 'job related' enunciated by the Supreme Court in Griggs v. Duke Power Co. and other Supreme Court decisions prior to Wards Cove Packing Co. v. Atonio." Civil Rights Act of 1991, Pub.L. No. 102-166, Sec. 3, 105 Stat. 1071 (1991) (citations omitted). Thus, as urged by the EEOC, we hold that the District Court should have applied the standard of proof first enunciated in Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971), and reinstated by the 1991 Act.
 
 
 8
 The 1991 Act returned the burden of persuasion regarding business justification to the defendant employer. Under Wards Cove, after the plaintiff established a prima facie case of disparate impact, the defendant employer bore the burden of producing evidence of a legitimate business justification in defense of the challenged policy. The burden of persuasion, however, remained on the plaintiff. Under the Griggs standard, the burden is on the defendant employer to prove both a "compelling need" for the challenged policy, and the lack of an effective alternative policy that would not produce a similar disparate impact. Hawkins v. Anheuser-Busch, Inc., 697 F.2d 810, 815 (8th Cir.1983) (quoting Kirby v. Colony Furniture Co., 613 F.2d 696, 705 n. 6 (8th Cir.1980) (emphasis omitted)).
 
 
 9
 Domino's has had its day in court on the business justification issue. Wards Cove was not decided until after the Pizzaco I trial. Griggs was the governing standard at the time of trial and the standard enunciated in Wards Cove was not applied to this case until the District Court did so on remand. Domino's thus had a full and fair opportunity at trial to meet its burden of proof for a business justification defense under the Griggs standard. Accordingly, there is no reason to require a new evidentiary hearing on the business justification issue, as the issue properly can be decided on the existing trial record.
 
 IV.
 
 10
 The EEOC contends that the record conclusively demonstrates that Domino's has failed to show business justification under Griggs for its inflexible no-beard policy and that we need not remand to the District Court for a determination of that issue. We agree. Though ordinarily we would leave to the trial court the task of applying, in the first instance, the correct legal standard to the facts of the case, there are times when considerations of judicial efficiency call for a different approach. See Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 621, 86 S.Ct. 1018, 1027, 16 L.Ed.2d 131 (1966) ("[i]n view of the fact that this controversy already dates back more than eight years, that it has been before the Court of Appeals twice and that the relevant standard is not hard to apply in this instance, we think this controversy had better terminate now."); O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951) (determining the correct principle of law, examining the record, and, because the record was not voluminous and the standard was not difficult to apply, deciding the issue without remand); Eastway Const. Corp. v. City of New York, 821 F.2d 121, 124 (2d Cir.) (noting that "there are occasions ... where reviewing courts resolve issues normally decided by lower courts in order to bring protracted litigation to a close" ), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). The approach taken in such cases is, as Justice Holmes observed, "a concession to the shortness of life." Reeve v. Dennett, 145 Mass. 23, 28, 11 N.E. 938, 944 (1887), quoted in Eastway, 821 F.2d at 124.
 
 
 11
 The instant case is one in which the interests of judicial efficiency weigh heavily in favor of resolving the business justification issue here and terminating the litigation now. This case dates back over six years and has generated two appeals to this Court and a petition for certiorari to the Supreme Court. The trial record is easily mastered and complete. The relevant business justification standard is not difficult to apply in light of the evidence presented. Thus, we conclude it is appropriate for this Court to determine the business justification issue, eschewing a remand on this issue and bringing this litigation to a close.
 
 
 12
 Under the Griggs standard prescribed by the 1991 Act, the burden is on Domino's to show a substantial business justification for its strict no-beard policy. This burden is a heavy one. Hawkins, 697 F.2d at 815. Domino's must show "a manifest relationship to the employment in question," Griggs, 401 U.S. at 432, 91 S.Ct. at 854, quoted in Dothard v. Rawlinson, 433 U.S. 321, 329, 97 S.Ct. 2720, 2727, 53 L.Ed.2d 786 (1977). Domino's must also show a "compelling need ... to maintain that practice ... and that there is no alternative to the challenged practice." Kirby, 613 F.2d at 705 n. 6 (emphasis omitted) citing United States v. St. Louis-San Francisco Ry., 464 F.2d 301, 308 (8th Cir.1972) (en banc), cert. denied, 409 U.S. 1107, 1116, 93 S.Ct. 900, 913, 34 L.Ed.2d 687, 700 (1973).
 
 
 13
 We apply Griggs to Domino's evidence concerning the business justification defense.[1] Domino's offered the testimony of Paul D. Black, Domino's vice president for operations. Black said it was "common sense" that "the better our people look, the better our sales will be." Tr. at 405. Black also cited a public opinion survey indicating that up to twenty percent of customers would "have a negative reaction" to a delivery person wearing a beard. Id. Further, Black speculated that Domino's would encounter difficulty enforcing any exceptions to their dress and grooming code. Id. at 406-407. Black did not offer evidence of any particular exception that was tried without success; rather, he merely stated that monitoring the hair length and moustaches of employees at five thousand Domino's locations is difficult. Id. at 407.
 
 
 14
 Black's testimony was largely speculative and conclusory. Such testimony, without more, does not prove the business necessity of maintaining the strict no-beard policy. See Hawkins, 697 F.2d at 815 ("An employer cannot rely on purely conclusory testimony by company personnel to prove that a [challenged practice] is job-related and required by business necessity.").
 
 
 15
 In addition to Black's testimony, Domino's offered the results of a public opinion survey it commissioned. The survey purported to measure public reaction to beards on pizza shop employees. The survey showed that up to twenty percent of those surveyed would react negatively to a delivery man wearing a beard. Even if the survey results indicated a significant customer apprehension regarding beards, which they do not, the results would not constitute evidence of a sufficient business justification defense for Domino's strict no-beard policy. Although this Circuit has not directly addressed customer preference as a business justification for policies having a disparate impact on a protected class, cases from other circuits have not looked favorably on this kind of evidence. See Diaz v. Pan Am. World Airways, Inc., 442 F.2d 385, 388-89 (5th Cir.) (customer preference may only be taken into account when it goes to a matter affecting the company's ability to perform the primary necessary function or service it offers, rather than a tangential aspect of that service or function), cert. denied, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971); Gerdom v. Continental Airlines, Inc., 692 F.2d 602 (9th Cir.1982) (holding that customer preference for slim female flight attendants did not justify a discriminatory policy where weight was unrelated to job performance), cert. denied, 460 U.S. 1074, 103 S.Ct. 1534, 75 L.Ed.2d 954 (1983). The existence of a beard on the face of a delivery man does not affect in any manner Domino's ability to make or deliver pizzas to their customers. Customer preference, which is at best weakly shown by Domino's survey, is clearly not a colorable business justification defense in this case. Significantly, the survey makes no showing that customers would order less pizza in the absence of a strictly enforced no-beard rule.
 
 
 16
 Under the Griggs standard, once the EEOC made out a prima facie case of disparate impact created by the strict no-beard policy (which, as we held in Pizzaco I, the EEOC clearly did here), the burden shifted to Domino's to establish a business justification defense. Domino's has not met this burden.[2] It has failed to prove a compelling need for the strict no-beard policy as applied to those afflicted with PFB and has failed to present any evidence suggesting that the current policy is without workable alternatives or that it has a manifest relationship to the employment in question. Griggs, 401 U.S. at 423, 91 S.Ct. at 827; see Kirby, 613 F.2d at 705 n. 6, citing United States v. St. Louis-San Francisco Ry., 464 F.2d at 308). Domino's is free to establish any grooming and dress standards it wishes; we hold only that reasonable accommodation must be made for members of the protected class who suffer from PFB. We note that the burden of a narrow medical exception for African American males who cannot shave because of PFB appears minimal. The employer, of course, should not be precluded from requiring that any beards permitted under this narrow medical exception be neatly trimmed, clean, and not in excess of a specified length.
 
 
 17
 We reverse the District Court's finding of business justification for Domino's no-beard policy as applied to PFB sufferers and remand to the District Court for entry of an injunction granting the EEOC the narrow prospective relief it seeks. The injunction shall be carefully tailored to place Domino's under the minimal burden of recognizing a limited exception to its no-beard policy for African American males who suffer from PFB and as a result of this medical condition are unable to shave. We leave the language of the injunction to the sound discretion of the District Court, informed, we would hope, by proposed language agreed upon by the parties and submitted to the court for its consideration.
 
 
 
 [1]
 On remand from Bradley v. Pizzaco of Neb., Inc., 939 F.2d 610 (8th Cir.1991) (Pizzaco I ), cert. denied, --- U.S. ----, 112 S.Ct. 933, 117 L.Ed.2d 105 (1992), the District Court did not conduct any additional evidentiary hearing or otherwise take any additional evidence. Thus we need examine only the trial record to decide the question of business justification
 
 
 [2]
 Even under Wards Cove, Domino's claim of sufficient business justification appears to be on extremely unstable ground. Because we hold that Griggs is the governing standard, we need not reach the question of whether the District Court correctly analyzed the evidence under the Wards Cove standard